PER CURIAM.
 

 Khalid Ali Pasha appeals two first-degree murder convictions and sentences of death for the 2002 killings of his wife Robin Canady and step-daughter Renee-sha Singleton. Our jurisdiction over death sentences is mandatory.
 
 See
 
 art. V, § 3(b)(1), Fla. Const. Pasha contends that his request to proceed pro se, made on the morning that jury selection began, was unequivocal and thus the trial court violated
 
 Faretta v. California,
 
 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), by determining the request to be equivocal and denying it. We agree.
 
 [1]
 

 I. BACKGROUND
 

 On October 15, 2007, approximately one week before Pasha’s trial was set to commence, Pasha moved to discharge his counsel, Nick Sinardi, and obtain substitute counsel. This motion was based on a
 
 *1260
 
 disagreement between Pasha and Sinardi regarding the appropriate defense strategy. The trial court held a hearing on October 17, 2007, pursuant to
 
 Nelson v. State,
 
 274 So.2d 256 (Fla. 4th DCA 1973). The trial court denied Pasha’s motion, finding that Sinardi was rendering effective assistance. During the same hearing, Pasha raised the issue of proceeding pro se. Specifically, Pasha stated: “As a right — I have a right not to have a lawyer to sit with me if I don’t want to.” The trial court then responded: “That’s not before me right now. Right now you filed a motion to discharge Mr. Sinardi.... I’ve denied it. If you have another request, ... put anything that you want me to consider in written form and I promise you I will hear it before trial.”
 

 On October 22, 2007, the morning that jury selection was to begin, Pasha filed a written motion to proceed pro se, which stated in part, “Khalid A. Pasha, pro se, has filed this motion with this honorable court for Petitioner to proceed pro se, and not allow Mr. Nick J. Sinardi to furtherance his negligent, and service on the above style case [sic].” Pasha also orally stated to the trial court that he wanted to proceed pro se. The trial court then engaged in a
 
 Faretta
 
 inquiry. Toward the end of the
 
 Faretta
 
 inquiry, the trial court asked Pasha: “Do you have any questions of me with respect to your right to have counsel appointed to represent you? I guess what I’m getting at is do you want a lawyer to represent you?” The following pertinent exchange then occurred, during which the trial court denied Pasha’s motion to proceed pro se:
 

 THE DEFENDANT: It is wiser to have a lawyer. My contention is that I’m against having an attorney. I don’t think Sinardi put forth the effort in my situation.
 

 THE COURT: So are you telling me that you want a lawyer but you do not want Mr. Sinardi; is that correct?
 

 THE DEFENDANT: Yes, sir. But I don’t have the choice to pick who I want so it means obvious[ly] the only other alternative is to be pro se.
 

 THE COURT: I have to make a comment now that based upon what you’ve just said to me I have to find that your request to represent yourself is equivocal, it’s not an unequivocal request at this juncture but I’ll continue. I’ve advised you of your right to counsel. The advantages of having counsel, the dangers and disadvantages of not having a lawyer.
 

 The nature of the charges and that is that you could get death — a death sentence for either count and or you could receive a life sentence for either count.
 

 Are you absolutely certain that you do not want to continue with an appointed lawyer?
 

 THE DEFENDANT: As I stated I would love to have a lawyer definitely I would rather have a lawyer.
 

 THE COURT: Okay.
 

 THE DEFENDANT: But apparently I don’t have that choice.
 

 THE COURT: Okay. Well, again, we went, Mr. Pasha, through I guess it was last Wednesday what we call a
 
 [Nelson
 
 ] hearing which I heard everything you had to say about your concerns and complaints about Mr. Sinardi. I heard from Mr. Sinardi. I heard from the State. I weighed all those things. I asked you — you did put it in writing and in fact we delayed it for a day from Monday to Wednesday and after weighing and assessing all those things I made a determination under
 
 [Nelson
 
 ] that Mr. Sinardi was not being ineffective. In other words he was being effective in his representation of you.
 

 
 *1261
 
 Now by law you have a right to ask the Court to allow you to represent yourself and before I can allow that to happen, two things have to occur.
 

 I have to make a finding that you [are] knowingly and voluntarily and intelligently waiving your right to counsel. But the more important thing is you have to tell me unequivocally that you want to represent yourself.
 

 I cannot make that finding because you’ve told me very candidly and very honestly under oath that you would rather proceed with counsel but that you simply do not feel comfortable with Mr. Sinardi so having gone through this
 
 [Faretta]
 
 inquiry I’ll respectfully deny your request to represent yourself and will proceed with Mr. Sinardi as your counsel and that matter will have to be addressed if I’m ruling incorrectly it will have to be addressed with an appellate court if it reaches that stage. So anything else from counsel?
 

 Jury selection then commenced.
 

 II. ANALYSIS
 

 Pasha does not assert that the trial court conducted an inadequate
 
 Faretta
 
 inquiry. Instead, Pasha contends that the trial court erred in determining that his request to proceed pro se was equivocal and in thereafter denying that request. “Under the United States Supreme Court’s ruling in
 
 Faretta,
 
 an accused has the right to self-representation at trial. A defendant’s choice to invoke this right ‘must be honored out of that respect for the individual which is the lifeblood of the law.’ ”
 
 Tennis v. State,
 
 997 So.2d 375, 377-78 (Fla.2008) (internal quotation marks omitted) (quoting
 
 Faretta,
 
 422 U.S. at 834, 95 S.Ct. 2525). “[T]he Sixth and Fourteenth Amendments include a ‘constitutional right to proceed
 
 without
 
 counsel when’ a criminal defendant ‘voluntarily and intelligently elects to do so.’ ”
 
 Indiana v. Edwards,
 
 554 U.S. 164, 128 S.Ct. 2379, 2383, 171 L.Ed.2d 345 (2008) (quoting
 
 Faretta,
 
 422 U.S. at 807, 95 S.Ct. 2525). It is clear that “[b]efore the trial court can make a decision whether to permit the defendant to proceed pro se, the defendant’s request for self-representation must be unequivocal.”
 
 Tennis,
 
 997 So.2d at 378.
 

 In
 
 Weaver v. State,
 
 894 So.2d 178, 191 (Fla.2004), Weaver argued on appeal that his request to proceed pro se was
 
 not
 
 unequivocal and that the trial court thus erred in allowing Weaver to represent himself. This Court rejected Weaver’s argument and held that Weaver’s request to proceed pro se was indeed unequivocal. Except for the trial court’s ruling on the request to proceed pro se, the relevant facts of
 
 Weaver
 
 closely parallel the facts here. Weaver initially sought appointment of new counsel because of a disagreement between Weaver and his counsel regarding which defense to present to the jury. The trial court conducted a
 
 Nelson
 
 hearing but concluded that counsel was effective and thus Weaver was not entitled to substitute counsel if he discharged his current counsel.
 
 Id.
 
 The trial court then asked Weaver whether he wanted to keep his current counsel or discharge him. The trial court then stated:
 

 Because if you do not want [current counsel] to represent you, this Court would not be in a position to appoint you another attorney.... If you can afford an attorney of your own, you have that right to retain private counsel. And if you decide not to have [current counsel] represent you, then you will need to determine whether or not you are competent yourself to represent yourself in this matter.
 

 Id.
 
 at 191-92 (second alteration in original). At that point, “Weaver reiterated that he could not proceed with [current counsel’s] defense and did not want [cur
 
 *1262
 
 rent counsel’s] assistance if it meant proceeding with the second-degree murder defense.”
 
 Id.
 
 at 192. After determining that Weaver could not afford a private attorney, the trial court conducted a
 
 Faret-ta
 
 inquiry and concluded that Weaver was knowingly and intelligently waiving his right to appointed counsel.
 
 Id.
 
 at 192-93.
 

 In upholding the trial court’s determination that Weaver’s request to represent himself was unequivocal, this Court explained:
 

 Weaver decided to discharge [counsel] even though the court found that [counsel] was providing effective and competent counsel.
 
 A defendant who persists in discharging competent counsel after being informed that he is not entitled to substitute counsel is presumed to be unequivocally exercising his right to self-representation.
 

 Id.
 
 at 193 (emphasis added);
 
 see also id.
 
 at 191 (“If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant that if he discharges his original counsel, the court may not thereafter be required to appoint a substitute. If the defendant continues to demand dismissal of his court-appointed counsel, the trial judge may in his discretion discharge counsel and require the defendant to’ proceed to trial without representation.” (citation omitted));
 
 Jones v. State,
 
 449 So.2d 253, 258 (Fla.1984) (“[Defendant persistently demanded that to which he was not entitled — counsel of his choice provided by the state. As a matter of guidance, defendants who without good cause refuse appointed counsel but do not provide their own counsel are presumed to be exercising their right to self-representation.”).
 

 The reasoning of
 
 Weaver
 
 is controlling here. In Pasha’s case, the trial court erroneously determined that Pasha’s statement that he preferred to have an attorney, but not Sinardi, in effect negated his request to proceed pro se. After the court denied Pasha’s motion to discharge Sinardi, Pasha maintained both in a written motion and orally before and during the
 
 Faretta
 
 inquiry that he preferred proceeding pro se to being represented by Sinardi. As we held in
 
 Weaver,
 
 at that point the trial court should have “presumed [that Pasha was] unequivocally exercising his right to self-representation.” 894 So.2d at 193;
 
 see also Jones,
 
 449 So.2d at 258.
 

 The fact that Pasha stated to the trial court that he preferred representation by a different attorney is of no consequence. Pasha’s comments showed his correct understanding that the trial court’s ruling after the
 
 Nelson
 
 hearing meant that Sinar-di was the only appointed counsel to which he was entitled. Faced with that reality, Pasha clearly expressed a desire to proceed pro se in order to avoid proceeding with counsel he found to be unacceptable. Contrary to the trial court’s reasoning here, Pasha’s continuing expressions of dissatisfaction with the trial court’s ruling at the
 
 Nelson
 
 hearing did not defeat his constitutional right to represent himself rather than be represented by the appointed counsel he had repudiated.
 

 This error of the trial- court requires reversal. “Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to ‘harmless error’ analysis. The right is either respected or denied; its deprivation cannot be harmless.”
 
 McKaskle v. Wiggins,
 
 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).
 

 III. CONCLUSION
 

 The trial court committed reversible error, by determining that Pasha’s motion to proceed pro se was equivocal. Where a trial court has denied a defendant’s re
 
 *1263
 
 quest for substitute counsel after a
 
 Nelson
 
 hearing and the defendant still maintains that he wants to discharge counsel and represent himself, the defendant’s request is unequivocal — even where the defendant states his continuing preference for substitute counsel. We therefore reverse Pasha’s convictions for first-degree murder, vacate his sentences of death, and remand for further proceedings consistent with this opinion.
 

 It is so ordered.
 

 QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . Pasha also argues that Florida's capital sentencing scheme is unconstitutional. In view of Pasha’s success on his
 
 Faretta
 
 claim, we need not address this argument.